UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID BUI DANG | CIVIL ACTION |
| VERSUS | NO. 22-4607 |
| TOYOTA MOTOR SALES, U.S.A., INC., ET AL. | SECTION "R" (2) |

## ORDER AND REASONS

Before the Court is defendants' unopposed motion for summary judgment.[1] For the following reasons, the Court grants the motion.

## I.   BACKGROUND

Plaintiff David Bui Dang brought this action in Louisiana state court against defendants Toyota Motor Sales, U.S.A., Inc. ("TMS"),[2] Toyota Motor Engineering and Manufacturing North America, Inc. ("TEMA"), and Toyota Motor North America, Inc. ("TMNA").[3]  Plaintiff alleges that on October 19, 2020, he was driving a 2014 Lexus ES350 on the interstate in New Orleans, Louisiana, when he involuntarily collided with a guard rail.[4]  Plaintiff asserts

---

[1]  R. Doc. 21.
[2]  On April 11, 2024, the Court dismissed TMS from the action without prejudice for plaintiff's failure to serve process.  R. Doc. 27.
[3]  R. Doc. 1-1 at 7.
[4]  *Id.* at 7-8; R. Doc. 21-5 at 2.

that the vehicle's airbags did not deploy upon impact and that, as a result of the collision and non-deployment of the airbags, he sustained injuries to his right ankle, right foot, knees, and head.[5] Following the accident, the vehicle was taken to an unknown junkyard by a tow company, after which it was picked up by an automotive industry company called Copart.[6] No inspections of the vehicle were made by plaintiff or defendants following the accident.[7] Plaintiff alleges that the vehicle was manufactured by defendants and that it was defective because its airbag safety system failed to deploy despite a high-impact collision.[8] Plaintiff's complaint alleges that the airbag system was unreasonably dangerous in construction and/or composition and, therefore, seeks to hold defendants jointly liable under the Louisiana Products Liability Act ("LPLA").[9]

TEMA answered the suit, explaining that it "does not manufacture, assemble or sell to the public any Toyota or Lexus vehicles or components for such vehicles," and "does not provide after sales service for Toyota or Lexus vehicles."[10] TEMA further stated that although it had "certain limited

---

[5]   R. Doc. 1-1 at 8-9.
[6]   R. Doc. 21-5 at 3-4.
[7]   *Id.* at 4; R. Doc. 21-1 at 2.
[8]   R. Doc. 1-1 at 8.
[9]   *Id.*
[10]  R. Doc. 1-2 at 1-2.

involvement with the 2014 U.S. bound Lexus ES350, Toyota Motor Corporation ("TMC"), located in Japan, was responsible for and had overall design and developmental testing authority for the 2013-2018 U.S. bound Lexus ES350."[11] TMNA filed an answer, asserting that it is responsible for business efficiency and coordination among Toyota's North American sales, manufacturing, and engineering operations.[12] TMNA denied any responsibility for the "design, developmental testing, manufacture, assembly, importation, distribution, inspection, sale, marketing, or servicing of the 2014 U.S. bound Lexus ES350 or any of its systems or component parts."[13]

TEMA and TMNA removed the action on November 21, 2022, based on diversity jurisdiction.[14] TEMA and TMNA now move for summary judgment.[15] They contend that plaintiff never propounded discovery on the named defendants, never noticed a deposition, and never disclosed any expert witnesses or provided any expert witness report.[16] TEMA and TMNA further state that, in response to an interrogatory requesting the identity of

---

[11]   *Id.* at 2.
[12]   R. Doc. 5-2 at 15.
[13]   *Id.* at 16.
[14]   R. Doc. 1.
[15]   R. Doc. 21.
[16]   R. Doc. 21-1 at 4-5.

all persons who may testify on plaintiff's behalf at trial and the substance of their testimony, plaintiff responded "none."[17] Plaintiff also indicated in his response to an interrogatory that he would not produce any reports, correspondence, or analyses prepared by any experts relating to the vehicle.[18] TEMA and TMNA therefore contend that, besides his own self-serving testimony or belief that the vehicle was defective, plaintiff does not intend to call any witnesses who can support his claims or any experts who can offer an opinion as to why or how the lack of airbag deployment caused his injuries.[19] Without such testimony, TEMA and TMNA assert that plaintiff cannot prove injury causation under Louisiana law.[20]

Moreover, TEMA and TMNA contend that plaintiff lacks evidence to support his LPLA claim, including evidence that TEMA and TMNA are the "manufacturers" of the allegedly defective product and that the allegedly unreasonably dangerous characteristic of the product arose during the product's reasonably anticipated use when viewed from the perspective of the manufacturer.[21] TEMA and TMNA also argue that there is neither evidence of the vehicle and its allegedly defective components and condition,

---

[17]    *Id.* at 5.
[18]    *Id.*
[19]    *Id.*
[20]    *Id.*
[21]    *Id.* at 5-6.

nor expert opinions supporting the allegedly unreasonably dangerous characteristic or its causation of his injuries.[22]

Finally, TEMA and TMNA assert that plaintiff was intoxicated at the time of the crash, which they contend negates plaintiff's claim that his injuries and damages were solely and proximately caused by the alleged defect in the vehicle's airbag safety system.[23] TEMA and TMNA attach to their motion certified medical records taken at the hospital where plaintiff was treated after the accident, in which the treating physician stated that plaintiff reportedly "drank a significant amount of alcohol and then crashed his car on purpose [in] an attempt to end his life secondary to depression and suicidal thoughts after a break-up 5 months ago."[24] Additionally, TEMA and TMNA submit the deposition transcript of Officer Michael Christian, the investigating officer deployed to the scene of the accident, who stated that plaintiff told him that he had been drinking before the accident.[25] Although plaintiff denied having used alcohol for the twenty-four hours preceding the accident in his responses to interrogatories,[26] he did not deny his alcohol consumption during a later deposition, stating only that he could not

---

[22]  *Id.*
[23]  *Id.* at 6-7.
[24]  R. Doc. 24-1 at 1, 3.
[25]  R. Doc. 21-7 at 7-8.
[26]  R. Doc. 1-3 at 11.

5

remember whether he consumed alcohol on the morning of the accident.[27] TEMA and TMNA argue that this evidence undermines the causation element of plaintiff's claim, and that the Court is left with no other evidence from which it can be deduced that "the cause of the accident was anything other than the actions of the intoxicated plaintiff."[28] TEMA and TMNA therefore assert that because plaintiff has insufficient evidence to carry his burden of proof at trial, summary judgment is warranted. Plaintiff does not oppose the motion.[29]

The Court considers the motion below.

---

[27] R. Doc. 21-1 at 6-7; R. Doc. 21-6 at 29.
[28] *Id.* at 7.
[29] TEMA and TMNA's motion for summary judgment was set for submission on April 3, 2024, making plaintiff's memorandum in opposition due on March 26, 2024. See Local Rule 7.5. Plaintiff failed to respond by that date. Instead, plaintiff filed an opposition fourteen days later, on April 9, 2024. R. Doc. 26. He did so without seeking leave of Court, and he offered no explanation for his untimely filing. Due to a deficiency in plaintiff's opposition, the Court marked the filing as deficient, and gave plaintiff seven days to cure the deficiency. R. Doc. 27. Plaintiff attempted to refile his opposition on April 17, 2024, but the document was again marked as deficient. R. Doc. 29. Plaintiff failed to cure the deficiency within seven days and, therefore, the opposition is stricken from the record and will not be considered by the Court in ruling on defendants' motion.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (first citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and then citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). All reasonable inferences must be drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory

7

allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party must put forth evidence that would "entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991) (internal quotation marks omitted)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a

8

genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

In the Fifth Circuit, a district court may not grant a "default" summary judgment on the ground that it is unopposed. *See Morgan v. Fed. Express Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015) (collecting cases). Even in the context of unopposed motions for summary judgment, the movant must show that there is no genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (quoting *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)). If the moving party fails to meet its burden, the Court must deny its motion for summary judgment. *Id.* In determining whether the movant has met its burden, the Court may accept the movant's evidence as undisputed. *Morgan*, 114 F. Supp. 3d at 437 (quoting *UNUM Life Ins. Co. of Am. v. Long*, 227 F. Supp. 2d 609 (N.D. Tex. 2002)).

## III. DISCUSSION

Plaintiff brings his claims pursuant to the LPLA. The LPLA provides for "the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. Ann. § 9:2800.52; *see also Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995) (noting that the LPLA's remedies are "exclusive"). The elements of a products liability claim under the LPLA are "(1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Jack v. Alberto-Culver USA, Inc.*, 949 So. 2d 1256, 1258 (La. 2007) (citing La. Rev. Stat. Ann. § 9:280054(A)). A product is "unreasonably dangerous" within the meaning of the statute "if and only if" it is unreasonably dangerous: (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty. La. Rev. Stat. Ann. § 9:2800.54(B)(1)-(4). Thus, the LPLA limits the plaintiff to four theories of recovery: construction or composition defect, design defect, inadequate warning, and breach of express warranty. *See id.*

10

In his interrogatory responses, plaintiff contends that the vehicle at issue was defective both in construction or composition and in design.[30] TEMA and TMNA contend that plaintiff cannot sustain his burden under the LPLA on either theory of recovery.[31] *See Caboni v. General Motors Corp.*, 398 F.3d 357, 361 (5th Cir. 2005) ("[T]he claimant in an LPLA products liability claim has the burden of proving every element of the claim." (citing La. Rev. Stat. Ann. § 9:2800.54(D)). First, they argue that plaintiff cannot prove that they were the manufacturers of the subject vehicle so as to be liable under the LPLA.[32] *See Ayala v. Enerco Group, Inc.*, 569 F. App'x 241, 245 (5th Cir. 2014) ("The LPLA does not provide a cause of action against sellers of products not falling under the LPLA's definition of 'manufacturer.'" (citing La. Rev. Stat. Ann. § 9:2800.53)). The LPLA defines a manufacturer as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce." La. Rev. Stat. Ann. § 9:2800.53(1). "Manufacturing a product" under the Act "means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." *Id.* The statute further defines a manufacturer to include (1) an entity that "otherwise holds himself out to be the manufacturer

---

[30] R. Doc. 1-3 at 8-9, 17.
[31] R. Doc. 21-1.
[32] *Id.* at 9-10.

11

of the product"; (2) "[a] seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage"; (3) "[a] manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer"; or (4) "[a] seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer." *Id.* § 9:2800.53(1)(a)-(d). TEMA and TMNA denied that they were the manufacturers of the subject vehicle in their answers and Rule 26 disclosures, and plaintiff has not put forth any evidence or argument showing that a genuine issue exists as to TEMA and TMNA's manufacturer status. Plaintiff has therefore failed to carry his burden of proof at the summary judgment stage as to this essential element of his LPLA claim. *See* Fed. R. Civ. P. 56(c) (stating that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *Celotex*, 477 U.S. at 322 (holding that a party may support its motion for summary judgment by showing that there is no evidence to support an essential element of the non-movant's claim); *see also Stahl v.*

12

*Novartis Pharm. Corp.*, 283 F.3d 254 (5th Cir. 2002) ("[I]f the non-moving party can point to nothing in the record supporting its claim, summary judgment is appropriate.").

Additionally, TEMA and TMNA assert that summary judgment is warranted because plaintiff cannot prove a defect either in construction or composition or in design. First, as to the "construction or composition" or "manufacturing" defect claim, "plaintiff must establish that, at the time the product left the manufacturer's control, 'the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.'" *Stahl*, 283 F.3d at 261 (quoting La. Rev. Stat. Ann. § 9:2800.55). "In other words, a plaintiff must prove that a product 'is defective due to a mistake in the manufacturing process.'" *Abrogast v. Timex Corp.*, No. 05-2076, 2010 WL 148288, at *5 (W.D. La. Jan. 12, 2010) (quoting *Stahl*, 283 F.3d at 263). Furthermore, "[t]o make this showing, a plaintiff 'must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it unreasonably dangerous.'" *Moore v. BASF Corp.*, No. 11-1001, 2012 WL

13

6025917, at *3 (E.D. La. Dec. 4, 2012) (quoting *Welch v. Technotrim, Inc.*, 778 So. 2d 728, 733 (La. App. 2 Cir. 2001)).

Here, plaintiff alleges that the vehicle involved in the accident was defective in its construction or composition because its airbag safety system failed to deploy despite the vehicle sustaining a high impact front end collision.[33] In response to an interrogatory asking plaintiff to specify the alleged manufacturing defect and to identify any specifications or performance standards from which he contends the vehicle deviated, plaintiff responded:[34]

> Research was conducted about the manufacturing defects of the Toyota airbags and it stated that "NHTSA said in April it had identified two frontal crash events, including one fatal crash 'involving Toyota products where (electrical overstress) is suspected as the likely cause' of airbags not deploying. Both involved newer Corolla cars."

Plaintiff's reference to an undated, general report, which is not itself in the record, of two accidents involving vehicles of a different make and model is insufficient to support a manufacturing defect claim. *See Brocato v. DePuy Orthopaedics, Inc.*, 2015 WL 854150, at *3 (E.D. La. Feb. 25, 2015) (noting that a manufacturing defect claim is shown by comparing the

---

33   R. Doc. 1-1 ¶ 6; R. Doc. 1-3 at 17 ("Plaintiff claims that the airbag failing to come out is dangerous [in construction and/or composition].").
34   R. Doc. 1-3 at 8-9.

14

allegedly defective product to identical product models). Plaintiff has also failed to show how the allegedly defective vehicle's airbag system materially deviated from any comparator products' airbag systems. *See Md. Cas. Co. v. Wal-Mart Stores, Inc.*, No. 05-1399, 2009 WL 1766856, at *2 (M.D. La. June 19, 2009) (holding that plaintiffs "failed to present any evidence to create an issue of material fact regarding the issue of defective construction or composition of" allegedly defective Christmas tree lights because they did not argue that the defective lights were materially different from exemplar lights). Because the subject vehicle has been taken to a junkyard, and plaintiff did not inspect or test the vehicle's airbag system beforehand,[35] plaintiff cannot demonstrate that the product deviated from any "otherwise identical" product. *See Moore v. BASF Corp.*, No. 11-1001, 2012 WL 6025917, at *2-3 (E.D. La. Dec. 4, 2012) (holding that because plaintiffs did not test the particular paint products used in the allegedly defective product, and did not show that they "even ha[d] custody of the paint in question so that tests may be conducted," plaintiffs failed to show that the products deviated otherwise identical products). Moreover, plaintiff has not submitted or identified any summary judgment evidence, expert or otherwise, showing what the manufacturer's specifications or performance

---

35   R. Doc. 1-3 at 3-4, 16.

15

standards were for the Lexus ES350 and its airbags, or how the plaintiff's vehicle and its airbag system materially deviated from these standards so as to render it unreasonably dangerous. *See Lacassin v. Virco, Inc.*, No. 11-CV-2104, 2012 WL 6183682, at *4-5 (W.D. La. Dec. 11, 2012) (granting summary judgment on manufacturing defect claim when plaintiff did not present "any objective evidence, expert or otherwise, that a defective condition actually existed in the [product] at the time it left [the manufacturer's] control"); *Arant v. Wal-Mart Stores, Inc.*, No. 13-cv-2209, 2015 WL 1419335, at *4-5 (W.D. La. Mar. 26, 2015), *aff'd* 626 F. App'x 237 (5th Cir. 2015) (holding that expert testimony was required to prove LPLA claims when the question before the jury was "not an assessment that a lay person can make from a mere inspection of the product itself," and granting summary judgment because plaintiff failed to submit any expert or other testimony as to the alleged unreasonably dangerous characteristic). Without such evidence, plaintiff has failed to identify specific facts that establish a genuine issue for trial as to whether the vehicle was unreasonably dangerous in construction or composition. *See Reynolds v. Bordelon*, 172 So. 3d 607, 613-14 (La. 2015) (finding no competent summary judgment evidence to support plaintiff's "construction or composition" defect claim when plaintiff's expert was not confirmed as an airbag expert or an accident re-constructionist, and there

was no factual evidence to support claim); *Fernandez v. Tamko Bldg. Prods., Inc.*, 2 F. Supp. 3d 854, 870-71 (M.D. La. 2014) (holding that plaintiff failed to point to any evidence that the product failed to conform to manufacturer's performance standards or specifications without evidence of the performance standards or product specifications or evidence of applicable industry or regulatory standards); *Brunet v. Alcon Lab'ys, Inc.*, No. 07-3618, 2008 WL 1771911, at *3 (E.D. La. Apr. 17, 2008) (granting summary judgment on manufacturing defect claim because "plaintiffs [ ] failed to provide any evidence that suggest[ed] that the [allegedly defective product] deviated in any way from other [identical products], an essential element of a manufacturing defect claim under the LPLA"); *Lacoste v. Pilgrim Int'l*, No. 07-2904, 2009 WL 126847, at *4 (E.D. La. Jan. 15, 2009) (granting summary judgment because plaintiffs did not put forth evidence of defendant's manufacturing specifications or demonstrate how the product in question materially deviated from such standards).

Turning to plaintiff's design defect claim, the Court finds that plaintiff likewise fails to point to evidence of specific facts that create a genuine issue as to this claim. A product is defective in design if, at the time it left the manufacturer's control,

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

17

> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. Rev. Stat. Ann. § 9:2800.56.

Plaintiff has not submitted evidence of any possible alternative designs for the Lexus ES350's airbag system that would have lowered the risk of the airbags not deploying. Indeed, in response to an interrogatory requesting that plaintiff specify the nature of the alleged design defect and any alternative designs plaintiff claims would have prevented or lessened his damages, plaintiff merely responded that he "believe[d] that the accident happened because there were defects related to the sensors in the vehicle."[36] Plaintiff's unspecific, conclusory response based solely on his own belief and speculation is insufficient to support a design defect claim. And plaintiff has not presented any evidence to support the elements of this claim, including evidence that safer alternative designs were in existence at the time the vehicle left the manufacturer's control or that the risk avoided by such

---

36   R. Doc. 1-3 at 8.

18

designs outweighed the burden of adopting the designs. *See Morgan v. Gaylord Container Corp.*, 30 F.3d 586 (5th Cir. 1994) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 181, 183 (5th Cir. 1990)). Although it is not fatal to plaintiff's design defect claim that he does not intend to call any expert witness or present any expert report,[37] *Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 137 (5th Cir. 2004), plaintiff's own testimony, without any "expert testimony or other convincing technical evidence," is insufficient to satisfy his burden of proof. *Haskins Trucking Inc. v. Goodyear Tire & Rubber Co.*, No. 07-0585, 2008 WL 1775272, at *5 (W.D. La. Apr. 17, 2008) ("[A] review of the case law involving Louisiana products liability claims reveals that courts generally demand, or at a minimum favor, expert testimony to prove an unreasonably dangerous defect in composition or design of a product."); *see also Belleau v. Bridgestone/Firestone N. American Tire, LLC*, No. 05-192, 2008 WL 565480, at *1 (M.D. La. Feb. 28, 2008) (holding that plaintiffs' own testimony about an accident allegedly caused by defective tire and their argument that there were issues of fact in defendant's expert reports was insufficient evidence to satisfy burden of proof). Plaintiff has therefore failed

---

37    *Id.* at 7-8, 16-17.

19

to set out specific facts showing that a genuine issue exists as to his design defect claim.

Accordingly, the Court finds that plaintiff has failed to present evidence sufficient to enable a reasonable trier of fact to conclude that he has established the essential elements of his LPLA claims. The Court therefore grants summary judgment in favor of defendants.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for summary judgment. Plaintiff's claims against TEMA and TMNA are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __1st__ day of May, 2024.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE